IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

```
                             )
LOURDES GABIKAGOJEASKOA,     )
                             )
        Plaintiff,           )
                             )
vs.                          )          No. 12-2151-JTF-dkv
                             )
UNIVERSITY OF MEMPHIS,       )
                             )
        Defendant.           )
```

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(ECF No. 7)
ORDER OF DISMISSAL
ORDER DENYING MOTION TO CONTINUE DEADLINES AS MOOT
(ECF No. 21)
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
AND
ORDER DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

On February 24, 2012, Plaintiff Lourdes Gabikagojeaskoa filed a pro se complaint under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-16 et seq., alleging that Defendant University of Memphis ("University") had discriminated against her on the basis of her national origin. (ECF No. 1.)  On June 1, 2012, Defendant University filed a motion for summary judgment, supported by a legal memorandum; a statement of undisputed facts and supporting exhibits; the affidavit of Shirley Raines, Defendant's President; Board of Regents Policy 5:02:03:60; Defendant's Faculty Handbook; Letter from Ralph Faudree, Defendant's Provost; Letter of Appeal by Plaintiff; Final Draft from the Tenure and Promotion Appeals Committee; Letter from President Raines to Plaintiff; Defendant's EEO Policy; and Board of Regents Policy 5:01:02:00. (ECF No. 7.)  Plaintiff responded to the motion for

summary judgment on August 8, 2012. (ECF No. 11.) On August 16, 2012, Defendant replied to Plaintiff's response. (ECF No. 13.)

Under Federal Rule of Civil Procedure 56, on motion of a party, the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment "bears the burden of clearly and convincingly establishing the nonexistence of any genuine [dispute] of material fact, and the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986); see Fed. R. Civ. P. 56(a). The moving party can meet this burden by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his case. See Fed. R. Civ. P. 56(c)(2); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).

When confronted with a properly supported motion for summary judgment, the respondent must set forth specific facts showing that there is a genuine dispute for trial. See Fed. R. Civ. P. 56(c). A genuine dispute for trial exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the

2

material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). One may not oppose a properly supported summary judgment motion by mere reliance on the pleadings. <u>See Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). Instead, the nonmovant must present "concrete evidence supporting [her] claims." <u>Cloverdale Equip. Co. v. Simon Aerials, Inc.</u>, 869 F.2d 934, 937 (6th Cir. 1989) (citations omitted); *see* Fed. R. Civ. P. 56(c)(1). The district court does not have the duty to search the record for such evidence. *See* Fed. R. Civ. P. 56(c)(3); <u>InterRoyal Corp. v. Sponseller</u>, 889 F.2d 108, 111 (6th Cir. 1989). The nonmovant has the duty to point out specific evidence in the record that would be sufficient to justify a jury decision in her favor. *See* Fed. R. Civ. P. 56(c)(1); <u>InterRoyal Corp.</u>, 889 F.2d at 111. "Summary judgment is an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action[,] rather than a disfavored procedural shortcut." <u>FDIC v. Jeff Miller Stables</u>, 573 F.3d 289, 294 (6th Cir. 2009) (internal quotation marks and citations omitted).

> Under Local Rule 56.1(b):
> Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either:
>
> (1)  agreeing that the fact is undisputed;
>
> (2)  agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or
>
> (3)  demonstrating that the fact is disputed.

> Each disputed fact must be supported by specific citation to the record. Such response shall be filed with any memorandum in response to the motion. The response must be made on the document provided by the movant or on another document in which the non-movant has reproduced the facts and citations verbatim as set forth by the movant. In either case, the non-movant must make a response to each fact set forth by the movant immediately below each fact set forth by the movant. In addition, the non-movant's response may contain a concise statement of any additional facts that the non-movant contends are material and as to which the non-movant contends there exists a genuine issue to be tried. Each such disputed fact shall be set forth in a separate, numbered paragraph with specific citations to the record supporting the contention that such fact is in dispute.

Under Local Rule 56.1(d), a "[f]ailure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these rules shall indicate that the asserted facts are not disputed for purposes [of] summary judgment."

> Under Fed. R. Civ. P. 56(e):
> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

In evaluating a motion for summary judgment, "[t]he court need

consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).[1]

Plaintiff has failed to respond to Defendant's statement of material facts in the format required by Local Rule 56.1(b). The essential facts are, therefore, not disputed and are adopted by the Court to the extent they are properly supported by record evidence. Fed. R. Civ. P. 56(e)(3); *see* Carver v. Bunch, 946 F.2d 451, 454-55 (6th Cir. 1991). The Court cannot deny a motion for summary judgment on the expectation that the plaintiff will be able to produce evidence at trial to support her claims. Cox v. Kentucky Dep't of Transp., 53 F.3d 146, 149 (6th Cir. 1995) ("Essentially, a motion for summary judgment is a means by which to challenge the opposing party to 'put up or shut up' on a critical issue.").

---

[1]     Even before the 2010 amendments to Rule 56, a court evaluating a summary judgment motion was not required to conduct an independent search of the record to determine whether there might be evidence to support a plaintiff's claims. Wimbush v. Wyeth, 619 F.3d 632, 638 n.4 (6th Cir. 2010) ("The most that Buchanan may point to as far as rebutting evidence is a large package of evidence attached to her response to Wyeth's partial summary judgment motion regarding punitive damages. This evidence was not attached to her brief responding to Wyeth's merits argument, nor was it cross-referenced in that brief. Instead, Buchanan suggests that the fact that the evidence was in the record somewhere is sufficient to create a question of fact and survive summary judgment. This is simply incorrect. Even if the evidence to which Buchanan now refers was sufficient to rebut Wyeth's evidence of inadequate warning, it was Buchanan's job to point to the evidence with specificity and particularity in the relevant brief rather than just dropping a pile of paper on the district judge's desk and expecting him to sort it out."); Tucker v. Tennessee, 539 F.3d 526, 531 (6th Cir. 2008) ("Importantly, '[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.'") (quoting Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-1480 (6th Cir. 1989) (citation omitted); Guarino v. Brookfield Township Trustees, 980 F.2d 399, 404 (6th Cir. 1992) ("Appellants' argument that the district court erred in not searching the record *sua sponte* is wholly without merit. The facts presented and designated by the moving party were the facts at hand to be dealt with by the trial court.").

In the complaint, Plaintiff alleges that she was denied tenure and terminated from employment based on her national origin, Basque. (ECF No. 1 at 2-3, ECF No. 1-1 at 3.) Defendant responds that it is undisputed that Plaintiff is a member of a protected class and that she suffered an adverse employment action when she was denied tenure. (ECF No. 7-1 at 8.) Defendant contends that Plaintiff cannot prove that she was treated differently because of her national origin. (Id.) The facts relevant to the pending motion are as follows:[2]

1.   Plaintiff, an assistant professor of Spanish in the Department of Languages and Literature at the University of Memphis, sought tenure and promotion pursuant to Tennessee Board of Regents ("TBR") and University policies. (ECF Nos. 7-2 at 2, 7-3, 7-4.)

2.   Her application package was reviewed in accordance with the policies of TBR and the University by the various committees and officials of the University. (Id.)

3.   In this process, Plaintiff's application received a positive, but not unanimous (7-3 positive) recommendation from her department, and negative recommendations from the department chair, the college committee (7-6 negative), and the Dean of the College. (Id.)

4.   The last review at this stage is by the Provost, who is the Chief Academic Officer of the University. (Id., ECF No. 7-5.)

5.   Provost Ralph Faudree also decided in the negative. He stated that "[m]y decision is based upon the lack of a strong research record that is expected of faculty in a doctorial research institution." (ECF No. 7-5.)

---

[2]   Citations are to record docket entries.

6.    At this point, the tenure approval process ended and, pursuant to policy, Plaintiff was informed that her employment at the University would not be renewed at the end of the following academic year.  (ECF No. 7-2 at 3.)

7.    Upon receipt of the Provost's decision, Plaintiff exercised her right to appeal the negative recommendation for tenure to the University's Tenure and Promotion Appeals Committee on January 30, 2011. (ECF No. 7-2 at 3, ECF No. 7-6.)

8.    Plaintiff cited only her disagreement with the Provost's comment that her application package did not show a record of strong research.  Her appeal was based upon the grounds of "mistake . . . of a credential that satisfies a requirement" and "arbitrary, capricious or unsubstantiated recommendation" as outlined in the Faculty Handbook.  (ECF No. 7-6 at 1.)

9.    Plaintiff's appeal contains no reference to Plaintiff's national origin and does not suggest that national origin was a factor in the decision.  (ECF No. 7-6 at 1-2.)

10.   On or about April 1, 2011, the University's Tenure and Promotion Appeals Committee reported to University President Dr. Shirley C. Raines in favor of Plaintiff's tenure.  (ECF No. 7-2 at 3, ECF No. 7-7.)

11.   The Committee focused solely on Plaintiff's "research, as Dr. Faudree acknowledged that it wasn't the quantity but the quality of the research that had been called into question."  (ECF No. 7-7 at 5.)

12.   The Committee's report does not suggest that they considered Plaintiff's national origin to have been a factor in the University's decision.  (ECF No. 7-2 at 4, ECF No. 7-7.)

13.   The University's Tenure and Promotion Appeals Committee serves as an advisory panel to the President. Dr. Raines was not bound by its decision.  The President exercises independent judgment on the decision to recommend to the Board of Regents the granting of tenure. (ECF No. 7-2 at 3.)

14.   In considering Plaintiff's appeal and the Appeals Committee's recommendation, President Raines also reviewed Plaintiff's application package and the recommendations of the various committees and officials of the University.  (Id.)

7

15.   Based on her review, President Raines exercised her independent academic judgment and concluded that she would not recommend Plaintiff to the Board for the awarding of tenure. (Id.)

16.   Plaintiff was notified by letter dated April 22, 2011, that Dr. Raines would not recommend her for tenure and that her employment would expire at the end of the 2011-12 academic year. (ECF No. 7-8.)

17.   Plaintiff appealed Dr. Raines' decision to TBR Chancellor John Morgan.   The appeal contained no allegations that the University's decision or Dr. Raines' decision were based on her national origin. (ECF No. 7-12.)

18.   Plaintiff alleged that President Raines' decision was "arbitrary and unsubstantiated" because she did not follow the recommendation of the Appeals Committee. (Id. at 2.)

19.   On December 9, 2011, Plaintiff filed a Charge of Discrimination based on nation origin with the Equal Opportunity Commission. (ECF No. 7-13.)

20.   The   Charge   of   Discrimination   contains Plaintiff's statement that she "believe[s] [she] has been discriminated against because of [her] National Origin (Basque)". (Id.)

Title VII of the Civil Rights Act of 1964 prohibits an employer from "discriminat[ing] against any individual . . . because of such individual's . . . national origin." 42 U.S.C. § 2000e-2(a)(1). In McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05, 93 S. Ct. 1817, 1824-26, 36 L. Ed. 2d 668 (1973), the Supreme Court established a framework for evaluating evidence in discrimination cases where, as here, the plaintiff has no direct evidence of discrimination. That process has been summarized as follows:

> First, the plaintiff has the burden of proving by the
> preponderance of the evidence a *prima facie* case of
> discrimination. Second, if the plaintiff succeeds in
> proving the *prima facie* case, the burden shifts to the
> defendant "to articulate some legitimate
> nondiscriminatory reasons for the employee's rejection."
> Third, should the defendant carry this burden, the
> plaintiff must then have an opportunity to prove by a
> preponderance of the evidence that the legitimate reasons
> offered by the defendant were not its true reasons, but
> were a pretext for discrimination.

Texas Dep't of Comm. Affairs v. Burdine, 450 U.S. 248, 252-53, 101

S. Ct. 1089, 1093, 67 L. Ed. 2d 207 (1981) (citations omitted). This

standard is used for disparate treatment and retaliation claims under

laws proscribing employment discrimination, including Title VII and

the ADEA. See, e.g., Spengler v. Worthington Cylinders, 615 F.3d 481,

491-92 (6th Cir. 2010) (ADEA retaliation); Younis v. Pinnacle

Airlines, Inc., 610 F.3d 359, 363 (6th Cir. 2010)(Title VII disparate

treatment); Harris v. Metropolitan Gov't of Nashville & Davidson

Cnty., 594 F.3d 476, 484-85 (6th Cir. 2010) (ADEA disparate

treatment); Chen v. Dow Chem. Co., 580 F.3d 394, 402 (6th Cir. 2010)

(Title VII retaliation). "The ultimate burden of persuading the trier

of fact that the defendant intentionally discriminated against the

plaintiff remains at all times with the plaintiff." Burdine, 450 U.S.

at 253, 101 S. Ct. at 1093.

Assuming that plaintiff states a *prima facie* case of

discrimination, the burden shifts to defendant to articulate a

legitimate, nondiscriminatory reason for its actions. Burdine, 450

U.S. 248, 252-53, 101 S. Ct. at 1093. Should defendant carry that

burden, plaintiff must then have an opportunity to prove by a

9

preponderance of the evidence that the legitimate reasons offered

by defendant were not its true reasons, but were a pretext for

unlawful discrimination. Id. As the Sixth Circuit has explained:

> Pretext may be established "either directly by
> persuading the [trier of fact] that a discriminatory
> reason more likely motivated the employer or indirectly
> by showing that the employer's proffered explanation is
> unworthy of credence." Burdine, 450 U.S. at 256, 101 S. Ct.
> 1089. A plaintiff will usually demonstrate pretext by
> showing that the employer's stated reason for the adverse
> employment action either (1) has no basis in fact, (2) was
> not the actual reason, or (3) is insufficient to explain
> the employer's action. See Imwalle v. Reliance Med. Prods.,
> Inc., 515 F.3d 531, 545 (6th Cir. 2008) . . . . However,
> the plaintiff may also demonstrate pretext by offering
> evidence which challenges the reasonableness of the
> employer's decision "to the extent that such an inquiry
> sheds light on whether the employer's proffered reason for
> the employment action was its actual motivation." Wexler
> v. White's Fine Furniture, Inc., 317 F.3d 564, 578 (6th Cir.
> 2003) (en banc); see also Burdine, 450 U.S. at 259, 1010
> S. Ct. 1089 ("The fact that a court may think that the
> employer misjudged the qualifications of applicants does
> not in itself expose him to Title VII liability, although
> this may be probative of whether the employer's reasons are
> pretexts for discrimination." (emphasis added)); Loeb v.
> Textron, Inc., 600 F.2d 1003, 1012 n. 6 (1st Cir. 1979)
> ("The reasonableness of the employer's reasons may of
> course be probative of whether they are pretexts. The more
> idiosyncratic or questionable the employer's reason, the
> easier it will be to expose as a pretext, if indeed it is
> one.").

White v. Baxter Healthcare Corp., 533 F.3d 381, 392-93 (6th Cir.

2008), cert. denied, ___ U.S. ___, 129 S. Ct. 2380 (2009)(footnote

omitted).

To establish a *prima facie* case of race or national origin

discrimination, Plaintiff must demonstrate (1) she is a member of

a protected class; (2) she suffered an adverse employment action;

(3) she was qualified for the job; and (4) her employer treated

similarly situated employees outside the protected class more
favorably, or her position was filled with a person outside of her
protected class.  Wright v. Murray Guard, 455 F.3d 702, 707 (6th Cir.
2006).  To qualify as "similarly-situated," an individual "must have
dealt with the same supervisor, have been subject to the same
standards and have engaged in the same conduct without such
differentiating or mitigating circumstances that would distinguish
their conduct or the employer's treatment of them for it." Hollins
v. Atl. Co., 188 F.3d 652, 659 (6th Cir. 1999).

Plaintiff contends that the negative opinion of an
external evaluator, Dr. Antonio Dorca, belittling her book and
educational background, arose from his prejudices and ideological
views as a Spanish Nationalist. (ECF No. 11 at 1-2.)  Plaintiff
contends that the Chair of her department and the Dean of her college
relied too heavily on Dorca's evaluation.  (Id.)  Plaintiff states
that she was only permitted to rebut Dorca's evaluation before the
Appeals Committee.  (Id.)  The Appeals Committee agreed with
Plaintiff that too much weight was given to Dorca's evaluation and
too little weight to the positive opinions of the other three
evaluators.  (ECF 7-7.)  The Department Head responded that the
three positive evaluations were not positive enough and none of the
evaluators recommended tenure.  (Id. at 7.)  The Appeals Committee
discounted the comments of Dr. Dorca and voted to overturn the
Provost's recommendation of nontenure.  (Id. at 7-8.)  Dr. Raines,

however, did not accept the recommendation of the Appeals Committee and did not recommend Plaintiff for tenure.  (D.E. 7-2 at 3.)

Plaintiff has satisfied the first two elements of a *prima facie* case.  However, she admits that she does not know of anyone similarly situated and her position has not been filled.  (ECF No. 1-1.)  Additionally, Plaintiff has not provided exhibits or affidavits establishing that Defendant considered national origin to be significant in recommending Plaintiff for tenure at any stage of the tenure application process.  During the appellate procedure, Plaintiff never reported that she believed she was being discriminated against on the basis of national origin.  (ECF No. 7-6, ECF No. 7-12.)

Plaintiff's complaint, response to the motion for summary judgment, and exhibits fail to provide any factual basis for a claim that Defendant failed to recommend her for tenure because of her national origin.  Rather, the record establishes that the Chair of Plaintiff's department expressed reservations about the organization, repetitive nature, depth, and analytical quality of Plaintiff's research.  (ECF No. 11-15.)  The Dean of Plaintiff's College considered the tenure decision to be difficult, with a clear split in views.  (ECF No. 11-16.)  These concerns express no mention of Plaintiff's national original and are clearly based on their informed and considered professional judgment.  Plaintiff's disagreement with the University's decision and her conclusory statements are insufficient to prove discrimination.

Plaintiff has failed to establish a *prima facie* case of national origin discrimination.   There are no genuine issues of material fact as to Plaintiff's claims of national origin discrimination, and Defendant is entitled to judgment as a matter of law.   Defendant's motion for summary judgment (ECF No. 7) is GRANTED.   Plaintiff's motion to continue all deadlines (ECF No. 21) is DENIED as moot.

The Court must also consider whether Plaintiff should be allowed to appeal this decision *in forma pauperis*, should she seek to do so. Twenty-eight U.S.C. § 1915(a)(3) provides that "[a]n appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith."

Pursuant to the Federal Rules of Appellate Procedure, a non-prisoner desiring to proceed on appeal *in forma pauperis* must obtain pauper status under Fed. R. App. P. 24(a).   *See* Callihan v. Schneider, 178 F.3d 800, 803-04 (6th Cir. 1999). Rule 24(a)(3) provides that if a party was permitted to proceed *in forma pauperis* in the district court, she may also proceed on appeal *in forma pauperis* without further authorization unless the district court "certifies that the appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed *in forma pauperis*." If the district court denies pauper status, the party may file a motion to proceed *in forma pauperis* in the Court of Appeals. Fed. R. App. P. 24(a)(4)-(5).

The good faith standard is an objective one.  Coppedge v. United States, 369 U.S. 438, 445 (1962). The test under 28 U.S.C. § 1915(a) for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any issue that is not frivolous. Id.  The same considerations that lead the Court to grant Defendant's motion for summary judgment also compel the conclusion that an appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith and Plaintiff may not proceed on appeal *in forma pauperis*. Leave to proceed on appeal *in forma pauperis* is, therefore, DENIED. If Plaintiff files a notice of appeal, she must also pay the full $455 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the United States Court of Appeals for the Sixth Circuit within thirty (30) days.

IT IS SO ORDERED this 26th day of March, 2013.

*s/ John T. Fowlkes, Jr.*
JOHN T. FOWLKES, JR.
UNITED STATES DISTRICT JUDGE